IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>AMBIPAR EMERGENCY RESPONSE,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 25-90524 (ARP) |

### DECLARATION OF THIAGO DA COSTA SILVA
### IN SUPPORT OF CHAPTER 11 PETITION

I, Thiago da Costa Silva, pursuant to 28 U.S.C. § 1746, and under penalty of perjury, declare the following to the best of my knowledge, information and belief:

1. I am a director of Ambipar Emergency Response (the "***Debtor***") as debtor in possession in the above-captioned chapter 11 case. As director, I am familiar with the day-to-day operations, business and financial affairs, and books and records of the Debtor.

2. I joined the Debtor in 2022 as director. Prior to joining the Debtor, I served as the chief financial officer and chief investor relations officer of Ambipar Topco (as defined below) from 2020 to 2024, and I am currently the Director of Integration and Finance of Ambipar Topco. Prior to joining Ambipar in 2014, I served as controllership consultant at Camargo Corrêa S.A. from 2012 to 2014, as a senior accounting analyst at the Camargo Corrêa Group from 2007 to 2012, and as an accounting analyst at Dispan Indústria e Comércio Ltda. from 2003 to 2007. I hold a bachelor's degree in accounting from Centro Universitário Salesiano de São Paulo — UNISAL and a graduate degree in strategic accounting management and international accounting from Pontifícia Universidade Católica de Campinas — PUC/Campinas.

---

[1] The last four digits of the Debtor's taxpayer identification number are 0263. The Debtor's address is P.O. Box 10008, Willow House, Cricket Square, Grand Cayman, KY1-1001, Cayman Islands.

4917-1750-3092

3. On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"). I submit this declaration (this "**Declaration**") to assist the Court and the parties-in-interest in understanding the circumstances that led to the commencement of this chapter 11 case.

4. All facts set forth in this Declaration are based on: (i) my personal knowledge; (ii) my communications with the Debtor's professional advisors; or (iii) my opinions developed through my overall professional experience and knowledge of the Debtor's history, financial condition, and affairs.

5. I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtor. If called as a witness, I could and would testify to the matters set forth herein.

## PRELIMINARY STATEMENT

6. The Debtor is a subsidiary of Ambipar Participações e Empreendimentos S.A. ("**Ambipar Topco**," together with its direct and indirect subsidiaries, "**Ambipar**" or the "**Company**"). Founded in 1995, Ambipar is now a multinational, global leader in recycling, waste management and emergency response businesses in Brazil and around the world. Ambipar Topco is a Brazilian-domiciled public company, with shares currently listed on the B3 stock exchange in São Paulo, Brazil under the ticker symbol "AMBP3."

7. The Debtor is a Cayman Island-domiciled exempted company with limited liability. It is a holding company with no material operating assets. While approximately 70.8% of its equity, and approximately 96% of its voting power, is held directly by Ambipar Topco, the Debtor is a public company, and its Class A common shares are currently listed on the NYSE American stock exchange in New York under the ticker symbol "AMBI."

8. Founded in 1995, Ambipar has two primary business segments:

- "***ESG***," which handles, recycles, transports and processes residues and recyclable materials throughout Latin America. The ESG business is primarily located in Brazil, and the entities comprising the ESG business are not subsidiaries of the Debtor.

- "***Response***," which, among other things, operates emergency response command centers to respond to disasters such as wildfires and oil spills. The Debtor is the parent entity for the Response business. Through the Debtor's direct and indirect subsidiaries, Response operates globally, with principal operations in the United States, Brazil, Canada, the United Kingdom, Ireland and Spain.

9. The Debtor is a guarantor of two series of New York-law Green Notes (defined below), issued by Ambipar Lux S.à.r.l. ("***Ambipar Luxco***"), a financing vehicle formed by Ambipar. Although there is approximately $1.05 billion in aggregate outstanding principal amount on the Green Notes, the Debtor's guarantee is limited to a maximum amount of approximately $328,180,000. The Green Notes are also guaranteed by Ambipar Topco and other Brazil-domiciled entities.

10. While the Response business is operationally sound, Ambipar Topco, Ambipar Luxco and certain of their affiliates unrelated to the Response business—generally domiciled in Brazil—are financially distressed. Certain lenders and financial counterparties to Ambipar have asserted defaults under their respective facilities and instruments. On September 24, 2025, Ambipar filed a petition with the Third Business Court of the Capital of Rio de Janeiro (the "***Brazilian Court***") for a "preliminary injunction prior to the main action" (a *Tutela Cautelar Em Caráter Antecedente*) (the "***Preliminary Injunction***") that enjoined certain creditor actions (*e.g.*, assertion of defaults, enforcement of debt and exercise of remedies) for 30 days to permit restructuring negotiations. This injunction was granted on September 25, 2025. Since then, Ambipar has used the breathing room to begin discussions with holders of its funded debt

3

regarding a consensual restructuring.  However, it has become clear that these negotiations will require far longer than the 30 days contemplated by the preliminary injunction.

11. Accordingly, on the date hereof, Ambipar Topco, the substantial majority of its Brazilian subsidiaries, Ambipar Luxco, and the Debtor (collectively, the "***RJ Parties***") commenced a *recuperação judicial* (the "***RJ Proceedings***") in Brazil.

12. **This Chapter 11 case is a parallel, plenary proceeding for the Debtor alongside its RJ Proceeding**.  Unlike the other RJ Parties, the Debtor is a U.S.-listed public company with U.S.-law debt held by dozens of bondholders, and subsidiaries operating around the world. Chapter 11 will help protect the direct and indirect assets of the Debtor, ensure fair treatment among the Debtor's stakeholders, and provide a readily-accessible forum for global parties-in-interest to be heard in connection with the Debtor's restructuring.  While the Debtor considered commencing a proceeding under Chapter 15, it believes that, at this time, a parallel proceeding under Chapter 11 is in the best interest of its estate and will maximize value for all stakeholders.

13. To reiterate, the Debtor is *not* an operating company and requires no "first day" relief.  Response's operating subsidiaries outside of Brazil are *not* obligated on Ambipar's funded debt and do not rely on Brazil, the Debtor or any of the RJ Parties for funding or corporate services. They are not debtors in this Chapter 11 case (or the RJ Proceedings), do not require Court protection, and are expected to operate in the ordinary course during the pendency of this restructuring.

## BACKGROUND

### A. General Background

14. The Debtor is a holding company incorporated under the laws of the Cayman Islands.  The Debtor's registered office is located at CO Services Cayman Limited, P.O. Box 10008, Willow House, Cricket Square, Grand Cayman, KY1-1001, Cayman Islands.  The Debtor

4

became a public company through a de-SPAC transaction, which closed on March 3, 2023. The Debtor is currently listed on the NYSE American Exchange under the ticker symbols "AMBI" (Class A common stock) and "AMBIWS" (warrants).

15. The Debtor serves as the parent holding company for the Response business. Its direct parent is Ampibar Topco. Response specializes in environmental services and operates in six main business units: (i) emergency response, (ii) fire response, (iii) marine response, (iv) medical response, (v) industrial response, and (vi) environmental response. Through its operating subsidiaries, Response operates in over 40 countries across six continents, providing standardized services across all regions. Response's U.S. headquarters is located in Houston, Texas where, through its operating subsidiaries, it employs more than 230 people.

16. Indirectly through its wholly-owned subsidiary, Emergência Participações S.A. ("*Emergencia*"), which is an RJ Party, the Debtor owns equity interests in various subsidiaries in the United States and across the globe, through which the Response business operates.

B. **Assets and Liabilities**

17. As a holding company for the Response business, the Debtor conducts no operations and has no employees. The Debtor's only material assets are (i) its equity interests in Emergencia and (ii) net intercompany receivables that may be owed to it by other entities in the Ambipar corporate group. The Debtor believes that its "center of main interests" (within the meaning of Section 1502(4) of the Bankruptcy Code) is in Brazil, although several of its indirect subsidiaries may have centers of main interests in the United States and other jurisdictions.

18. The Debtor is a limited guarantor on two series of notes issued by Ambipar Luxco, an entity formed as a financing vehicle within the Ambipar corporate structure.[2] Specifically, (i)

---

[2] Ambipar Luxco is not a debtor in this Chapter 11 case.

on February 6, 2024, LuxCo issued unsecured Green Notes maturing February 6, 2031, in an aggregate principal amount of $750 million (the "**2031 Green Notes**"), which bear interest at an annual interest rate of 9.875% and (ii) on February 5, 2025, LuxCo issued unsecured Green Notes maturing February 5, 2033 in an aggregate principal amount of $493 million (the "**2033 Green Notes**," and, together with the 2031 Green Notes, the "**Green Notes**"), which bear an annual interest rate of 10.875%.  As of the Petition Date, there is approximately $553 million and $493 million in aggregate principal amount of 2031 Green Notes and 2033 Green Notes, respectively, issued and outstanding.  The Green Notes are governed by New York law.  The Debtor's guarantees of the Green Notes is in an amount of $200 million for the 2031 Green Notes and $128.2 million for the 2033 Green Notes.

19. Aside from its guarantee of the Green Notes and intercompany loans, the Debtor has no other outstanding indebtedness or obligations and is not party to any other material contracts.

C. **Equity Ownership**

20. The outstanding equity interests in the Debtor consist of: (i) 16,195,105 shares of Class A Ordinary Shares (the "**Class A Shares**"), which are entitled to one (1) vote per share; (ii) 39,234,746 shares of Class B Ordinary Shares (the "**Class B Shares**"), which are entitled to ten (10) votes per share; and (iii) warrants.

21. Approximately 70.8% of the outstanding shares in the Debtor are owned by Ambipar Topco.[3]  The remaining outstanding shares in the Debtor are owned by: (i) Opportunity Agro Fundo de Investimento em Participações Multiestratégia Investimento no Exterior ("**Opportunity**"), who obtained shares through a private investment in public equity (24%); (ii)

---

[3] Mr. Borlenghi owns approximately 44% of Ambipar TopCo.

4917-1750-3092

HPX Capital Partners LLC, a Delaware limited liability company, and certain of its affiliates (the sponsor in the de-SPAC transaction) (collectively, "**HPX**") (3.5%); and (iii) other public shareholders (1.7%).

22. As of the Petition Date, Ambipar Topco holds all of the outstanding Class B Shares, representing approximately 96% of the voting power of the Debtor. Further, as part of the de-SPAC transaction, warrants to purchase shares of the Debtor's common stock at an exercise price of $11.50 per share were issued. As of the Petition Date, 16,180,000 public warrants and 676,707 private placement warrants remained outstanding.

23. In addition to myself, the Debtor's board of directors (the "**Board**") consists of the following directors: (i) Tércio Borlenghi Junior, Chairman of the Board; (ii) Guilherme Patini Borlenghi; (iii) Alessandra Bessa Alves de Melo; (iv) Marco Antonio Zanini (Independent Director); (v) Mariana Loyola Ferreira Sgarbi (Independent Director); and (vi) Victor Almeida (Independent Director).

## EVENTS LEADING TO THE CHAPTER 11 FILING

### A. Financial Distress in Brazil

24. Although Response's operating performance has been strong, beginning in the third quarter of 2025, its Brazilian affiliates have faced increasing financial distress.

25. In September 2025, a sequence of events, including the abrupt resignation of Ambipar's chief financial officer, severely undermined market confidence in Ambipar. As a result, Deutsche Bank S.A. - Banco Alemão ("**Deutsche Bank**"), the counterparty to certain of the Company's currency swap contracts (the "**Currency Swaps**") and an affiliate of the lender on approximately $35 million of loans to the Company (the "**DB Loans**"), demanded that Ambipar post additional collateral under the Currency Swaps.

26. Ambipar disputed and continues to dispute Deutsche Bank's calculation of the collateral requirements under the Currency Swaps.[4] Nonetheless, the Company provided approximately R$170 million ($31.4 million) in additional collateral contributions to Deutsche Bank. However, Deutsche Bank subsequently demanded that Ambipar make an additional collateral contribution of R$60 million by September 25, 2025. In addition, certain other financial institutions, including Banco Santander, notified Ambipar of alleged defaults under their respective financing agreements.

### B. The Preliminary Injunction

27. In light of these asserted defaults (and the cross-defaults that would ultimately result on the remainder of Ambipar's funded debt), on September 24, 2025, Ambipar filed a petition for relief with the Brazilian Court seeking the Preliminary Injunction. On September 25, 2025, the Brazilian Court entered the Preliminary Injunction, which, among other things, entered a 30-day stay of creditor enforcement actions and proceedings against all Ambipar entities, globally.

### C. Key Stakeholders

28. *Noteholders.* Following the public disclosure of the Preliminary Injunction, holders of the Green Notes formed an ad hoc group of noteholders (the "***Ad Hoc Group***"). The Debtor understands that the Ad Hoc Group holds a majority in outstanding principal amount of the Green Notes and is represented by Davis Polk & Wardwell LLP, as legal counsel, and Houlihan Lokey, as financial advisor.

29. *Minority Shareholders.* The Debtor's main minority shareholders, Opportunity and HPX, also have organized. On October 10, 2025, they sent a joint letter (the "***October 10 Letter***")

---

[4] There are other disputes between Ambipar and Deutsche Bank relating to the Currency Swaps, and Ambipar reserves all rights against Deutsche Bank with respect to the Currency Swaps.

to the board of directors of Ambipar Topco alleging that Ambipar Topco "has exerted undue influence over the Debtor for its own benefit and flouted corporate governance protocols."

30. While the Debtor reserves all rights in connection with the October 10 Letter, it is its hope that this Chapter 11 case, and the governance changes described below, assuage the concerns raised in the October 10 Letter, regardless of the merits of the allegations.

31. *Brazilian Banks*. Certain of the Debtor's affiliates, generally located in Brazil, are obligated on an aggregate amount of more than $117 million (U.S. dollar equivalent) of outstanding Brazilian-law debt to several major Brazilian banks (the "**Brazil Bank Debt**"). The Debtor and its operating subsidiaries are not obligated on the Brazil Bank Debt.

32. *Debenture Holders*. Certain of the Debtor's affiliates, generally located in Brazil, have issued five (5) series of debentures, at varying interest rates and maturities (collectively, the "**Debentures**"). As of June 30, 2025, the outstanding principal amount on the Debentures was approximately R$2.87 billion. The Debtor and its operating subsidiaries are not obligated on the Debentures, although Emergencia is the issuer of two of the series of Debentures, under which approximately R$450 million was outstanding as of June 30, 2025.

33. While the Brazil Bank Debt and the Debentures are not part of this Chapter 11 case, the Debtor understands that they will likely be part of any broader Ambipar debt restructuring.[5]

---

[5] The U.S. holding company for the Response business, Ambipar Holding USA, Inc. ("**Holdings USA**"), an indirect subsidiary of the Debtor, is obligated on a $90 million unsecured loan (the "**Holdings USA Loan**") from Itau BBA International Plc ("**Itau**"), which is guaranteed by Emergencia. Itau has purported to accelerate the Holdings USA Loan; Holdings USA has disputed the acceleration. No other entities are obligated on the Holdings USA Loan, and Holdings USA has no operations. The Debtor hopes to reach a consensual understanding with Itau regarding the Holdings USA Loan, but if necessary, the Debtor is prepared to cause Holdings USA to commence its own Chapter 11 case and would seek joint administration with this case.

### D. Ambipar Commences the RJ Proceeding and this Chapter 11 Case

34. As mentioned above, on September 25, 2025, the Brazilian Court granted the Preliminary Injunction. Since then, Ambipar has commenced discussions with holders of its funded debt regarding a consensual restructuring. However, it has become clear that these negotiations will require far longer than the 30 days contemplated by the Preliminary Injunction. Consequently, on October 20, 2025, the RJ Debtors commenced the Brazilian RJ Proceeding before the Brazilian Court.

### E. Appointment of Independent Director

35. In connection with the commencement of this Chapter 11 case, the Debtor's controlling shareholder, Ambipar Topco, intends to appoint an additional independent director of the Debtor with restructuring expertise (the "*Independent Director*"). Upon their appointment, the expectation is that the Independent Director would be delegated power and authority in connection with any matters in which a conflict of interest exists or is reasonably likely to exist (the "*Conflict Matters*") between (x) the Debtor and (y) Ambipar Topco and its current and former directors, managers, officers, equityholders, employees, advisors, affiliates, or other stakeholders (the "*Related Parties*"), but excluding the Debtor's direct and indirect subsidiaries. The Conflict Matters would include an independent investigation of potential claims and causes of action that the Debtor may hold against the Related Parties. Because of the exigencies of the Debtor's circumstances, the Debtor was unable to appoint the Independent Director prior to the Petition Date; however, the Debtor expects to appoint an Independent Director as soon as practicable in accordance with the Debtor's governing documents.

36. On October 17, 2025, counsel to Ambipar retained FTI Consulting, Inc. ("*FTI*") for a forensic accounting review of Ambipar, and it is the Debtor's expectation that FTI will be made available to the Independent Director for their investigation of Conflict Matters.

10

I certify under penalty of perjury that, based upon my knowledge, information and belief as set forth herein, the foregoing is true and correct.

Executed: October 20, 2025

                                          */s/ Thiago da Costa Silva*
                                          Thiago da Costa Silva
                                          Director